### CHASE v. KELLOGG.

*(Supreme Court, General Term, First Department.* February 11, 1891.)

NEGOTIABLE INSTRUMENTS—BONA FIDE HOLDERS.

    Writings whereby the parties signing them promise to pay to a person therein named $135 per month, in consideration of certain advertising privileges to be granted, are not promissory notes, and the relations of *bona fide* holder do not apply thereto; and if the signatures were obtained by fraud, or in contemplation of some future arrangement, these are defenses to the writings, into whosesoever hands they might come.

Appeal from circuit court, New York county.

Action by Lewis S. Chase against Marie L. Kellogg, to recover upon the following instruments:

"$———　　　　　　　　　　　　　　　　　　　　　NEW YORK, April 20th, 1886.

"We promise to pay to the order of L. S. Chase sixty dollars monthly, in the following manner, to-wit: $60.00 five days after date, and $60.00 on the 26th day of each succeeding month for six months from date, for the privilege of advertising purposes of two panels, each 8x22 inches, in 100 cars of the Central Park, North and East River R. R. Co., in the city of New York, for the term of six mos. from April 26th.

    [Signed]　　　　　　　　　　　　　　　　　　　"SERKYS TEA CO.

    　　　　　　　　　　　　　　　　　　　　　　"M. L. KELLOGG."

"$———　　　　　　　　　　　　　　　　　　　　　NEW YORK, April 20th, 1886.

"We promise to pay to the order of L. S. Chase one hundred and thirty-five dollars monthly, in the following manner, to-wit: $135.00 five days after date, and $135.00 on the 26th day of each succeeding month for six months from date, for the privilege of advertising purposes of two panels, each 8x22 inches, in 150 cars of the Third-Avenue Railroad Co., in the city of New York, for the term of six mos. from April 26th.

    [Signed]　　　　　　　　　　　　　　　　　　　"SERKYS TEA CO.

    　　　　　　　　　　　　　　　　　　　　　　"M. L. KELLOGG."

There was a verdict for defendant, and from the judgment entered thereon in her favor the plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Leavitt & Leavitt, (E. R. Leavitt,* of counsel,) for appellant. *E. H. Grandin, (E. C. Perkins,* of counsel,) for respondent.

VAN BRUNT, P. J. This action is brought to recover upon two certain contracts for advertising in railroad guides, alleged to have been made by the defendant. The answer denied the making of the contracts, and also set up the fact that, if signed, they were so signed without knowledge of their contents, and that the defendant's signature was obtained by fraud. Upon the trial of the case it was admitted that the contracts were signed by the defendant; and it was claimed upon the part of the plaintiff that one Dr. Goff, being the agent of the defendant, negotiated these contracts with the plaintiff, and procured their signature by the defendant, and delivered them to the plaintiff. The evidence upon the part of the defendant was that she was doing business in Twenty-Third street, and Dr. Goff came to her, and told her that she was selling an article for which he had a previous contract. Some discussion about the rights of the parties took place, at which Dr. Goff said that the only way for them to do was to go into a mutual contract, and for her to take part in the sale of this tea; that the defendant said she would speak to her business adviser, and Dr. Goff could also speak to him. There-

after it was agreed that Dr. Goff would, from a certain date, handle this particular brand of tea in his own manner, for the benefit of both. The evening before the contract with Dr. Goff was to go into effect he came to the defendant's office, and after some conversation he produced the contracts in question, which he said he would like the defendant to sign. She referred Goff to her business adviser, and his reply was that he had approved of the way they were going to do business the next day, and he wished the defendant would sign the contracts. He further said: "Will you sign these papers? Mr. Dimpfel [the business adviser] has approved of them, and we will have all the rest settled after." Thereupon she signed the contracts, but did not read the papers, and did not know what they were. The next morning, when Dr. Goff came, Dimpfel and the defendant were there, and Goff was told that they would have no business whatever with him. The witness thereupon asked Goff what the papers were that he had made her sign the night before. He replied, "Oh, never mind about them." The witness said, "Give them back to me." He said, "All right, I will be back and give them to you." And from that day to this she never saw Dr. Goff, and never heard of these papers until six months afterwards. It appears that Goff delivered them to the plaintiff, who swears that he kept the advertising spaces ready for the use of the defendant, but never gave any notice to the defendant that he was keeping them for her, or asked her to send the advertisement which would be inserted. He testified that he called at the defendant's office several weeks afterwards to see about it, but was told she was absent. He saw somebody there whom he thought was the book-keeper, and he was then told that the defendant had rescinded the contracts, and after that he did not make any demand until the money was all due. Upon this evidence the court submitted the question to the jury that, if these contracts were obtained by Dr. Goff by fraud, the defendant was not liable; and also that if the jury believed that the contracts were obtained by Dr. Goff conditionally, and he delivered the contracts after that in fraud of her rights, she was entitled to a verdict; and also that if the defendant delivered them conditionally to Goff, and, in violation of the restrictions placed upon them, he delivered them to the plaintiff, then verdict should be for the defendant. To these propositions the plaintiff excepted, which exceptions present the questions involved upon this appeal. We think that the error into which the appellant has fallen in the consideration of this case is in treating these contracts as promissory notes, and that the appellant stands in the position of a *bona fide* holder of a piece of negotiable paper. It is true that they read: ."We promise to pay to the order of" the plaintiff so many dollars per month. But that is followed by the statement of the consideration of an executory contract upon the part of the plaintiff; and it is clear that they have none of the qualities which attach themselves to ordinary commercial paper. These being simply contracts whereby the defendant agreed to pay to the plaintiff a certain sum monthly in consideration of services to be rendered, the relations of *bona fide* holder by no means apply. If the signature was obtained by fraud; if the contracts were delivered, and a restriction placed upon their delivery; if their signature was in contemplation of a future arrangement to be made in connection with the business which the defendant was carrying on,—all these were defenses to the contract, into whosesoever hands they might come. It appears from the evidence in this case that this man Goff was in no respect the agent of the defendant. It is true he represented himself so to be, but this by no means made him so. The parties were simply negotiating for a business arrangement which never was consummated, and Goff never had any right, according to the evidence, to bind the defendant by any transaction which he might enter into. It is claimed that, the defendant having placed it in his power to impose upon the plaintiff in respect to this contract, therefore the loss should fall upon her. But it is to be observed that the plaintiff, although

agreeing to furnish this space in advertising papers, and although receiving these contracts from a person who was a stranger to the contracts, never attempted for weeks to notify the principal, and then, after he had been informed that these contracts had been rescinded, never took any steps whatever to communicate with the defendant. It would appear that he was. pursuing the course of a man who desired to hold the defendant to a contract without performing any services thereunder; and we do not see that he presents himself exactly in the position of one who has been greatly wronged, or who has suffered great loss, by reason of the fact that the contracts had been delivered to him. There is not a particle of evidence that he has done a thing upon the faith of the contract. The judgment and order should be affirmed, with costs. All concur.